**Bruce A. QUARLES, Plaintiff,**

v.

**James A. LINEBERGER, Defendant.**

**CIVIL ACTION NO. 01–962.**

United States District Court, E.D. Pennsylvania.

May 6, 2003.

Bruce A. Quarles, Graterford, PA, pro se.

Mary Elizabeth Butler and Patrick J. McMonagle, Office of Attorney General, Philadelphia, PA, for Defendants.

Jeffrey M. Scott, Philadelphia, PA, for Respondent.

### *MEMORANDUM OPINION*

RUFE, District Judge.

Presently before the Court are numerous pending motions in this *pro se* civil action against Senior Judge James A. Lineberger of the Court of Common Pleas of Philadelphia. For the reasons set out below, Plaintiff's Amended Complaint is dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff is Bruce D. Quarles, an inmate currently incarcerated at SCI Graterford. Quarles filed this § 1983 action on March 13, 2001, suing the Commonwealth of Pennsylvania for violations of his civil rights in connection with his post-conviction collateral attack. The complaint was later amended by Court order, naming Senior Judge James A. Lineberger of the Philadelphia Common Pleas Court as the sole defendant. The exact nature of Plaintiff's allegations were not always clear during this litigation, but in the initial stages Plaintiff alleged that Senior Judge Lineberger violated his rights by not ordering a new trial for Plaintiff, and by preventing Plaintiff from receiving appellate review.

Jurisdiction is premised on 28 U.S.C. §§ 1331, 1343.

This case has a tortuous history, and requires some review. Initially this action was before my colleague, the Honorable Edmund V. Ludwig, Sr., who entertained Plaintiff's application to proceed *in forma pauperis*, as well as Plaintiff's numerous amendments to the initial complaint. On November 7, 2001, the Clerk of Court entered a default against Defendant Judge Lineberger, but Judge Ludwig set aside that entry of default in a March 21, 2002 Order and Memorandum. *See Quarles v. Lineberger*, No. Civ.A.01–962, 2002 WL 461684 (E.D.Pa. Mar.21, 2002). In addition, Judge Ludwig disposed of numerous other motions filed by Plaintiff, some of which lacked any merit whatsoever.[1] Thereafter Plaintiff filed a Motion to Vacate the March 21, 2002 Order setting aside the default judgment, and Judge Ludwig granted Plaintiff's subsequent request to stay disposition of that motion until Defendant responded to Plaintiff's interrogatories.

On May 16, 2002, Plaintiff filed his first "Request for Disqualification" under 28 U.S.C. §§ 144, 455, citing judicial bias evidenced by alleged favorable treatment to Defendant. Plaintiff reiterated his position by filing a "Request for Disposition" of his request for recusal. Judge Ludwig denied this request in a May 22, 2002 Order.

Only one week later Plaintiff filed his second affidavit of bias pursuant to 28 U.S.C. § 144, despite the fact that the statute expressly provides that a "party may file only one such affidavit in any case." On June 28, 2002, shortly after my appointment to the federal bench, the Clerk of Court assigned this case to me in accordance with the Court's procedure for random reassignment of cases. Plaintiff's subsequent filings made it quite apparent to the Court that Plaintiff had completely misinterpreted this purely administrative action as an endorsement by the Chief Judge of Plaintiff's repeated contention that Judge Ludwig harbored personal bias or prejudice against Plaintiff.

By October 2002 the litigation was nineteen months old and still had not proceeded beyond Plaintiff's complaints. Therefore, on its own initiative the Court imposed some order into the litigation by directing Defendant to file a response to the complaints, setting a schedule for discovery and dispositive motions, and placing the case in a trial pool. In addition, the Court issued an October 2, 2002 Order lifting the stay related to Plaintiff's Motion to Vacate Judge Ludwig's March 21, 2002 Order and Memorandum setting aside the Clerk's entry of default, and denying Plaintiff's Motion to Vacate.

Plaintiff responded to the Court's October 2, 2002 Order by filing a notice of appeal of that Order on October 29, 2002, but he also subsequently asked this ˙Court

---

1. Significantly, on April 16, 2002, Judge Ludwig ordered the Clerk of Court to discontinue efforts to appoint counsel for Plaintiff, his case having been reviewed and rejected for lack of merit by two attorneys. On April 30, 2002, and again on May 16, 2002, Plaintiff requested that the Court provide him with the names and addresses of the attorneys who declined to represent him in this matter. On June 28, 2002, Plaintiff requested a Writ of Mandamus from the Third Circuit for provision of these documents, and the Third Circuit denied this request in a December 3, 2002 unpublished opinion. *See In re Quarles*, 53 Fed. Appx. 227, 2002 WL 31927620 (3d Cir. Dec.3, 2002). While his mandamus petition was pending in the Third Circuit, however, on August 2, 2002, Plaintiff filed yet another document in furtherance of this request, also seeking copies of request forms and payment receipts for every individual who had requested copies of any documents in this case, and a copy of a particular filings in this case.

to vacate the Order on November 18, 2002. The Third Circuit dismissed Plaintiff's appeal on December 20, 2002 for failure to prosecute.

In addition to pursuing his appeal (and perhaps emboldened by what he mistook as a previous success), Plaintiff filed his third affidavit of bias pursuant to 28 U.S.C. § 144 on October 18, 2002, this time alleging that the "newly assigned judge ... has a personal prejudice against me." This affidavit was followed soon after by a fourth affidavit of bias on November 5, 2002. Apparently not satisfied with the efficacy of this form of protest, on November 18, 2002 Plaintiff then requested a transfer to another district court within the Third Circuit. The Court determined in an December 4, 2002 Order that Plaintiff's affidavit was an insufficient basis upon which to require recusal under 28 U.S.C. § 144. Not to be cowed, Plaintiff requested that the Court vacate this Order, and also asked the undersigned to disqualify herself under a different statute, 28 U.S.C. § 455, followed by his now pro forma request for disposition of same. The Court denied these requests in an April 3, 2003 Order.[2]

In the meantime Defendant filed a motion to dismiss and Plaintiff filed a response thereto. In a December 20, 2002 Memorandum and Order, the Court granted Defendant's motion, dismissing most of Plaintiff's claims with prejudice as conclusively barred by the doctrine of judicial immunity or the *Rooker–Feldman* doctrine. However, the Court permitted Plaintiff to amend his complaint to allege anew his allegations that Senior Judge Lineberger somehow interfered with Plaintiff's due process rights by refusing to forward certain papers to the appellate courts, thereby depriving him an appeal of a June 26, 1997 order issued by Judge Lineberger.

Plaintiff did file an Amended Complaint [collectively, docs. # 104, 107, 115],[3] which shall be the final chapter involving this Court in this protracted litigation.[4] For the first time since filing his first complaint in March 2001, Plaintiff attempts to add an additional defendant to his civil rights action, Susan Carmody, the Supervisor of the Clerk of Court's office for the Philadelphia Court of Common Pleas. The Amended Complaint contains the following allegations.

On June 26, 1997, Judge Lineberger issued an order dismissing Plaintiff's second Post Conviction Relief Act ("PCRA") peti-

---

2. In an attempt to dissuade Plaintiff from clogging the Court's docket with any additional, frivolous efforts to persuade a judge to recuse her/himself, the Court took note of Plaintiff's parallel undertakings directed at the same goal. For example, in related proceedings, citing Plaintiff's abuse of the judicial complaint process in these and separate proceedings, the Third Circuit barred Plaintiff from filing with the Judicial Council of the Third Circuit any further complaints of judicial misconduct or disability pursuant to 28 U.S.C. § 351. *See* In re Complaint of Judicial Misconduct J.C. No. 02–39 (March 19, 2003). The Court also explained to Plaintiff the actual circumstances surrounding the transfer of this case from Judge Ludwig's docket. Since issuing this April 3, 2003 Order, Plaintiff appears to have ceased his efforts to obtain another judge.

3. As he has done with each of his previous complaints, Plaintiff filed two subsequent amendments to his complaint. Consistent with the tradition of solicitous treatment of *pro se* litigants, the Court will consider Plaintiff's several amendments as constituting a single complaint. *See Todaro v. Bowman*, 872 F.2d 43, 44 (3d Cir.1989) (*pro se* litigants are held to "less stringent pleading standards" and afforded a "liberal interpretation of our procedural rules").

4. The Court has little doubt that Plaintiff will ask for an epilogue from the Third Circuit.

tion.[5] Plaintiff appealed Judge Lineberger's order, and contends that the Clerk's office received his notice of appeal on July 25, 1997. On August 3, 1997, Plaintiff received a July 31, 1997 memorandum from Ms. Carmody instructing Plaintiff to file an *in forma pauperis* ("IFP") application and proof of service in order to pursue his appeal. Plaintiff claims that he sent his IFP application to the Clerk's office on August 14, 1997, but that Ms. Carmody failed to process and transmit the IFP application to the Superior Court. Amended Complaint ¶¶ 5–10.

Two months later, on October 9, 1997, Plaintiff received an October 7, 1997 memorandum from Ms. Carmody again directing Plaintiff to file an IFP application in order to pursue his appeal. On October 14, 1997 Plaintiff wrote back to Ms. Carmody explaining that he had already sent his IFP application to her office. *Id.* ¶¶ 11–12.

Five months later, on March 2, 1998, Plaintiff received a copy of a February 27, 1998 letter from Ms. Carmody to Mr. Edmund Adams of the Superior Court. In that letter Ms. Carmody stated that Plaintiff had failed to comply with her requests to complete an IFP application, and that the Superior Court should take appropriate action to dismiss Plaintiff's appeal. Plaintiff claims that in fact Ms. Carmody withheld his IFP application from the Superior Court. On March 3, 1998, Plaintiff wrote to Mr. Adams informing him that Plaintiff had complied with Ms. Carmody's instructions to complete an IFP application, and requesting that his appeal not be dismissed. *Id.* ¶¶ 13–16.

Nearly seven months later, having received no briefing schedule from the Superior Court, Plaintiff wrote an October 20, 1998 letter of inquiry to the Superior Court. The court replied that its records reflected no pending appeal of Judge Lineberger's June 26, 1997 order. Plaintiff then sent three letters to Ms. Carmody inquiring about the status of his appeal, as well as a January 28, 1999 letter to Judge Lineberger, but received no reply. *Id.* ¶¶ 17–22.

Plaintiff next sent a June 16, 1999 letter to Judge Lineberger, to which he received an "August 30, 1999 response" that Plaintiff claims "reveals [Judge Lineberger] to be in collusion with Defendant Carmody to deprive me of appellate review." *Id.* ¶ 25. Plaintiff does not set forth the substance of Judge Lineberger's response in the Amended Complaint, but complains that Judge Lineberger failed to instruct Ms. Carmody to transmit Plaintiff's IFP application to the Superior Court.[6] He contends that the Superior Court has not dismissed his appeal of the June 26, 1997 order, and that Judge Lineberger and Ms. Carmody are holding his appeal "in limbo" in violation of his constitutional rights. *Id.* ¶¶ 28, 30.

Based on the foregoing, Plaintiff pursues this § 1983 action for violation of his constitutional rights to due process and equal protection under the Fourteenth Amendment. He seeks the following relief: (1) a declaratory judgment that Plaintiff has a

---

**5.** Under the PCRA, 42 Pa. Cons.Stat. Ann. §§ 9541–9546, a convicted defendant who has appealed his or her conviction to the Pennsylvania Superior Court, and has been unsuccessful, can also file a petition with the trial court (the "PCRA court") seeking a new trial or an acquittal based on, among other things, violations of the U.S. or Pennsylvania Constitutions that undermined the reliability of the conviction. A petitioner may appeal a denial of a PCRA petition to the Pennsylvania Superior Court and the Pennsylvania Supreme Court.

**6.** As discussed infra at Part II.B., Judge Lineberger's "response" was in fact a ruling related to Plaintiff's PCRA petition efforts.

right to appellate review of Judge Lineberger's June 26, 1997 order; (2) an injunction ordering that his appeal be heard by the Superior Court; (3) a declaratory judgment that Plaintiff's constitutional rights were violated; (4) $100,000 in compensatory damages from Ms. Carmody; and (5) $50,000 in punitive damages from Ms. Carmody.

## II. PENDING MOTIONS

### A. Request for Appointment of Counsel

■ For the third time in this litigation, Plaintiff has asked the Court to appoint counsel for him. His most recent request avers that the issues presented in this case are too complex for him to litigate without the assistance of counsel. Pursuant to its authority under 28 U.S.C. § 1915(e)(1), this Court has already attempted to procure an attorney to assist Plaintiff, but discontinued those efforts after two attorneys reviewed Plaintiff's claims and concluded they have no merit. *See* April 16, 2002 Court Order. As set forth below, the Court agrees that Plaintiff's claims have no merit, and thus his request for appointment of counsel will be denied yet again. *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir.2002) (when determining whether to appoint counsel, district court must first "assess whether the claimant's case has some arguable merit in fact or law").

### B. Defendant's Motion to Dismiss[7]

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). Claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court generally considers only the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). In addition, the Court is permitted to consider "documents whose contents are alleged in the complaint and whose authenticity no party questions." *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir. 2002).

Much of the relief sought in Plaintiff's Amended Complaint is precluded by the conclusions already outlined in this Court's December 20, 2002 Memorandum and Order. First, the Court already dismissed with prejudice Plaintiff's claims seeking injunctive relief against Senior Judge Lineberger because they are conclusively barred by the text of § 1983. Second, the Court dismissed with prejudice Plaintiff's claims seeking an injunction ordering a new trial or ordering an appeal be heard in his criminal case because they are barred by the *Rooker–Feldman* doctrine. Therefore, insofar as Plaintiff's Amended Com-

---

7. Plaintiff claimed that he never received a copy of Defendant Lineberger's motion to dismiss, and therefore failed to file a timely response. Upon learning of Plaintiff's alleged predicament, the Court in an April 21, 2003 Order directed Defendant to re-serve a copy of the motion, and permitted Plaintiff an additional fourteen (14) days from receipt thereof in which to respond. Plaintiff filed his response to Defendant's motion on April 29, 2003.

plaint seeks such relief, it is dismissed (yet again) with prejudice. The only claim currently before the Court is Plaintiff's allegation that Senior Judge Lineberger "refused to take action to protect Plaintiff's due process right" by ignoring the fact that "someone under his authority, namely Defendant Carmody," was "holding Plaintiff's appeal in limbo." Amended Complaint ¶ 43; *see also id.* ¶¶ 21–33.

The Supreme Court has suggested that when federal courts are confronted with cases such as this one, they should abstain from hearing the case. *See Heck v. Humphrey,* 512 U.S. 477, 487 n. 8, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("[I]f a state criminal defendant brings a federal civil rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings.") (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). However, a review of the record in this case reveals that Plaintiff lacks Article III standing to pursue any claim against Judge Lineberger, and thus this Court has no jurisdiction in this matter. *See Chong v. Dist. Dir., INS,* 264 F.3d 378, 383 (3d Cir.2001) ("[T]he Supreme Court has held that courts must decide Article III standing issues, even when not raised by the parties, before turning to the merits.") (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Accordingly, the Amended Complaint is dismissed with prejudice.

Standing goes to this Court's authority to hear a case under Article III of the U.S. Constitution, and if a plaintiff lacks standing the Court is without authority to act because there is no actual, ongoing case or controversy. *See* U.S. Const. art. III,

§ 2. The components of standing are well known:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir.2003). As explained below, Plaintiff's most recent filing reveals that he lacks injury in this case, and thus has no standing to pursue any claims against Judge Lineberger.

Although this case is now over two years old, the record has never fully illuminated the details of the wrongs allegedly committed by Judge Lineberger. In an effort to be solicitous toward this *pro se* plaintiff, the Court scoured Plaintiff's filings in vain, meeting only with generalized (albeit oftentimes articulate) condemnations of Judge Lineberger, the state court staff, Judge Ludwig, and the undersigned. Despite the passage of two years, Plaintiff's filings have failed to provide a clear, detailed, chronological explanation of the factual basis for his claims—until now. Plaintiff's most recent filing sheds just enough light on this matter to reveal that the relief sought by Plaintiff—appellate review of Judge Lineberger's June 26, 1997 order, has already been rendered. Thus, the factual record establishes that the Court has no jurisdiction to hear this case. *See Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.,* 227 F.3d 62, 69 (3d Cir.2000)

(in considering question of factual basis for subject matter jurisdiction, courts are not limited to complaint allegations, and are "free to weigh the evidence and satisfy itself whether it has power to hear the case").

Attached to Plaintiff's Response to Defendant Lineberger's Motion to Dismiss ("Plaintiff's Response") are several documents relating to Plaintiff's PCRA petitions. One of these documents is a decision issued by the Superior Court on December 13, 2000, which reveals the following procedural history. Ex. F to Plaintiff's Response, cited in Table at *Commonwealth v. Quarles*, 769 A.2d 1208 (Pa.Super.2000), *allo. denied*, 566 Pa. 640, 781 A.2d 142 (2001).

Plaintiff was convicted in state court of second-degree murder, criminal conspiracy, and robbery on February 17, 1982. The Superior Court affirmed his sentence on August 16, 1985, *Commonwealth v. Quarles*, 349 Pa.Super. 619, 503 A.2d 50 (1985), and the Pennsylvania Supreme Court denied allocator on March 31, 1986. Thereafter Plaintiff filed his first petition for post-conviction relief under the predecessor to the PCRA, the Post Conviction Hearing Act ("PCHA"), on May 13, 1986, which the trial court denied on February 17, 1988. The Superior Court affirmed on December 20, 1988, *see Commonwealth v. Quarles*, 386 Pa.Super. 652, 555 A.2d 942 (1988), and the Pennsylvania Supreme Court denied allocator on March 12, 1990. *See Commonwealth v. Quarles*, 525 Pa. 580, 575 A.2d 111 (1990). So concluded Plaintiff's first post-conviction relief petition.[8]

Plaintiff undertook his second petition for post-conviction relief on December 20, 1996, this time under the PCRA, which superceded the PCHA, and applies to all post-conviction petitions filed on or after April 13, 1988. It is this petition that Judge Lineberger denied on June 26, 1997. *See* Amended Complaint ¶ 5. Of course, Plaintiff appealed the June 26, 1997 order, and claims that Judge Lineberger, together with Susan Carmody, is currently holding it "in limbo" by refusing to take action to ensure that his appeal is docketed and heard by the Superior Court. *See* Amended Complaint ¶¶ 22, 25–26, 28–29, 31, 43. And hence, the instant lawsuit.

Before filing this lawsuit, however, Plaintiff attempted to persuade Judge Lineberger to assist him in perfecting his appeal by sending him a May 17, 1999 document entitled "Petition Seeking Rectification of Appellate Process." Ex. C to Plaintiff's Response. It is this document that Plaintiff contends was his "last request for equal protection of my rights to due process." Amended Complaint ¶ 23; *see also* Plaintiff's Response at 2 (confirming Ex. C is the document referenced in ¶ 23). In this document, which was filed in the Court of Common Pleas on June 16, 1999, Plaintiff explained that certain administrative missteps had resulted in errors that had impeded his appeal, including the confusion concerning his IFP application. *See supra* Part I; Amended Complaint ¶¶ 7–14.[9]

---

8. The Court has learned through its own research that Plaintiff also pursued a *pro se* habeas corpus petition in this federal district pursuant to 28 U.S.C. § 2254. The petition was denied. *See Quarles v. Samples*, Civ. A. No. 90–3625, 1991 WL 148773 (E.D.Pa. July 29, 1991).

9. The Court notes that while in this Court Plaintiff has insisted that Judge Lineberger and Susan Carmody are "in collusion" to deprive Plaintiff of his rights, Plaintiff explains in this document that his IFP petition became lost not because of some affirmative misconduct, but rather because he initially sent it to the wrong court office, and perhaps also because later correspondence between

Judge Lineberger interpreted this document as a third PCRA petition, and on August 30, 1999 denied it as untimely under 42 Pa. Cons.Stat. Ann. § 9545(b)(1) (second or subsequent PCRA petition must be filed within one year of date judgment becomes final). August 30, 1999 order, Ex. D to Plaintiff's Response. It is this August 30, 1999 ruling that Plaintiff alleges "reveals him to be in collusion with Defendant Carmody to deprive me of appellate review." Amended Complaint ¶ 25.

In an extraordinary act of brazen deception, Plaintiff failed to explain to the Court that he appealed Judge Lineberger's August 30, 1999 order to the Superior Court. In a December 13, 2000 Memorandum, the Superior Court affirmed Judge Lineberger, and addressed Plaintiff's arguments accordingly:

> In short, Appellant is arguing that the "third" PCRA petition filed on June 16, 1999, was actually his second, since the petition filed on December 20, 1996, never made it to our Court *due to his own error.* Regardless of how Appellant characterizes his second and third petitions, *both were nevertheless untimely.* ... Appellant's present PCRA petition was filed on December 20, 1996. Pursuant to 42 Pa.C.S. § 9545(b)(1), a second or subsequent PCRA petition must be filed within one year from the date his judgment of sentence became final, unless the petition sets forth certain specific exceptions. 42 Pa.C.S. § 9545(b)(3). Our Supreme Court denied Appellant's petition for direct review on March 31,

1986. Since he did not seek review with the United States Supreme Court, his judgment of sentence became final ninety days after March 31, 1986, or on June 29, 1986. As indicated, he did not file the second petition until December 20, 1996, more than ten years after his judgment of sentence became final. *Thus, clearly, his second petition for PCRA relief was untimely unless it fell within one of the statutorily delineated exceptions.*

Ex. F. at 2–3. The court went on to note that "Appellant has failed to set forth any of the exceptions required," and concludes, *"[t]hus, both petitions, filed on December 20, 1996, and on June 16, 1999, properly were dismissed as untimely filed." Id.* at 4, 575 A.2d 111 (emphasis added).[10]

■ The Superior Court's December 13, 2000 Memorandum demonstrates that Plaintiff had obtained the relief he sought before this lawsuit even began. The gravamen of Plaintiff's Amended Complaint is that his efforts to obtain appellate review of Judge Lineberger's June 26, 1997 order have been stymied, and that his due process rights have been infringed as a result. Amended Complaint ¶ 43. However, the above-quoted language clearly demonstrates that the state appellate court addressed the June 26, 1997 order, and concluded that Judge Lineberger was correct in dismissing Plaintiff's second PCRA petition. Although the appellate court decision states that the August 30, 1999 is the "subject of the instant appeal," the itali-

---

Ms. Carmody, Plaintiff, and the Prothonotary of the Superior Court contained typographical errors in the case docket number. The Court strongly suspects that it is these mere administrative errors that eventually led to this frivolous lawsuit.

10. The Court takes judicial notice of the fact that it is the practice of the Pennsylvania Superior Court to provide a copy of its ruling

to the trial court that issued the decision below. If defense counsel had access to the Superior Court's ruling and either failed to exercise reasonable diligence to discover it, or was negligent in so notifying the Court, she can rest assured that the taxpayers who fund both her office and this Court were very ill served by two years of needless litigation.

cized language quoted above makes clear that the Superior Court also reached the propriety of the June 26, 1997 order. Ex. F at 2–4. Therefore, the chief predicate underlying Plaintiff's claim that he has been deprived of due process—that he has been deprived appellate review—is today revealed to be completely false. Therefore, because Plaintiff actually did receive appellate review of the June 26, 1997 order, no injury exists. Thus, he lacks standing to pursue any claim against Judge Lineberger, and the Amended Complaint against Judge Lineberger is dismissed with prejudice.

An appropriate Order follows.

### ORDER

**AND NOW,** this 6th day of May, 2003, for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that:

1. Plaintiff's Request for Appointment of Counsel [Doc. # 109] is **DENIED;**

2. Upon consideration of Defendant's Motion to Dismiss [Doc. # 110], and Plaintiff's Response thereto [Doc. # 122], it is hereby **ORDERED** that Defendant's Motion is **GRANTED;**

3. It appearing that Plaintiff lacks standing to pursue the instant lawsuit, the Amended Complaint is **DISMISSED WITH PREJUDICE** in its entirety;

4. Plaintiff's Motion for Summary Judgment [Doc. # 116], Plaintiff's Request for Leave of Court to Amend Complaint Adding Party–Defendant [Doc. # 103], Plaintiff's Motion to Modify Caption [Doc. # 105], Plaintiff's Ex Parte Request to Enforce Order Directing Clerk to Forward Docs [Doc. # 102], and Plaintiff's Request for a Stay [Doc. # 123] are hereby **DENIED AS MOOT;**

5. For purposes of any future lawsuits filed by this Plaintiff, the Court hereby holds that Plaintiff's Amended Complaint is dismissed because it is both frivolous and fails to state a claim as those terms are used in 28 U.S.C. § 1915(g);

6. The Clerk of Court is hereby directed to mark this matter **CLOSED** for statistical purposes.

It is so **ORDERED.**